06/28/2005    **FILED**    10:12
LA05-15763ES
DEBTOR:
MANSOURI, MICHAEL MAZDAQ
JUDGE: Erithe A. Smith  553
TRUSTEE:
CHAPTER:  7    AD05-01701
-------------------------------------------------------
CLERK, U. S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIF.    ID: E-F
RECEIPT NO:    LA-020204    $ 150.00

Summons Issued  06/27/2005
Answer Date  7/27/2005
Hrg. Date  09/01/2005    at  09:30 AM

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
2  Including Professional Corporations
RICHARD W. BRUNETTE, JR., Cal. Bar No. 81621
3  THERESA L. WARDLE, Cal Bar No. 232803
333 South Hope Street, 48th Floor
4  Los Angeles, California 90071-1448
Telephone: (213) 620-1780
5  Facsimile: (213) 620-1398

6  Attorneys for Plaintiff
Bohannon Development Corporation

7

8

9

10

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

11  In re:

Case No. LA05-15763 ES

12  MICHAEL MAZDAQ MANSOURI,

Chapter 7

13  Debtor.

14  _____

**COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF
DEBT**
**(11 U.S.C. § 523)**

15  BOHANNON DEVELOPMENT
CORPORATION,,

16  Plaintiff,

17  v.

18  MICHAEL MAZDAQ MANSOURI,

19  Defendant.

20  _____

21

22

23

24

25

26

27

28

-1-

**1/E-F**
COMPLAINT TO DETERMINE
NONDISCHARGEABILITY OF DEBT

1    Plaintiff Bohannan Development Corporation ("Plaintiff" or "Bohannon") for

2  causes of action alleges as follows:

3

4    **JURISDICTION AND VENUE**

5    1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C.

6  § 1334.  Venue is proper pursuant to 28 U.S.C. § 1409 by reason of the Chapter 7 case of

7  debtor Michael Mazdaq Mansouri pending in this District as case number LA 05-15763-

8  ES.

9

10    2.    This adversary complaint is a "core proceeding" as defined in 28

11  U.S.C. §§ 157(b)(2)(H), 157(b)(2)(I) and 157(b)(2)(J).

12

13    **PARTIES**

14    3.    Plaintiff is a corporation with its principal place of business in the

15  State of Texas.

16

17    4.    Defendant Michael Mazdaq Mansouri ("Debtor) is a Chapter 7 debtor

18  in these proceedings.

19

20    **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

21    5.    Debtor was an individual engaged in the business of selling high-end

22  and customized automobiles.  In or about October 2003, Tom Bohannon ("Bohannon"),

23  who is the president of plaintiff Bohannon Development Corporation, spoke to the Debtor

24  about the purchase of an automobile.  As a result of these discussions with Debtor, on

25  October 30, 2003, the Debtor's company, By Design Automotive Group, Inc. ("By

26  Design") prepared a sales order for a 2004 Porsche 911 to be purchased in the name of

27  Plaintiff for $141,240.  Bohannon also requested that modifications for an additional

28

-2-    COMPLAINT TO DETERMINE
NONDISCHARGEABILTY OF DEBT

amount of $56,779.00 be made to the vehicle. Such modifications are reflected on the sales order. Attached hereto as Exhibit "1" is a true and correct copy of the sales order.

6.     On or about November 18, 2003, pursuant to a written sales agreement, Bohannon purchased the vehicle reflected in the sales order, a 2004 Porsche 911 (VIN# WP0CB29934S675176) (the "Porsche"). Attached hereto as Exhibit "2" is a true and correct copy of the written sales agreement. On that same day, Bohannon wrote and delivered to Debtor two checks, one in the amount of $141,240 for the purchase price of the Porsche (check # 0009123), and one in the amount of $15,000 as a deposit for modifications to the Porsche (check # 0008990). Attached hereto as Exhibit "3" are true and correct copies of check numbers 0009123 and 0008990.

7.     On or about January 26, 2004, the order for vehicle modifications was revised, and Debtor issued a revised sales order. Attached hereto as Exhibit "4" is a true and correct copy of the revised sales order. Bohannon wrote and delivered to Debtor a check for $43,794 on February 2, 2004 (check #0009121), which represented payment-in-full for all modifications to the Porsche. Check number 0009121 is attached as part of Exhibit "3".

8.     As a result of the foregoing, by February 2, 2004, Plaintiff had made payments totaling $200,034.00 to the Debtor, which constituted full payment for the Porsche and all modifications made to the Porsche.

9.     On March 4, 2004, Bohannon sent a letter to Debtor ("March 4th Letter") expressing dissatisfaction with the modifications done to the vehicle and instructing Debtor that the Porsche be kept "in a safe place" until the parties could reach a settlement of the dispute. Attached hereto as Exhibit "5" is a true and correct copy of the March 4th Letter. Bohannon was particularly concerned about damage done to the

1 | Porsche by Debtor's unauthorized use of the Porsche in various high intensity road tests
2 | authorized by the Debtor (but not Bohannon) for an article in a magazine.

3 |

4 |        10.     On or about September 17, 2004, the Plaintiff requested a CarFax
5 | report via the internet, which indicated that title to the Porsche had been transferred
6 | without Plaintiff's knowledge or consent to an unknown third party on May 1, 2004.
7 | Attached as Exhibit "6" is a true and correct copy of the internet printout from CarFax.  At
8 | no time did Plaintiff authorize a sale or sign any document that released his interest in the
9 | vehicle, the purchase price for which had already been fully paid by Plaintiff.

10 |

11 |        11.     On December 14, 2004, Bohannon sent a letter to Debtor ("December
12 | 14th Letter") demanding the return of all funds paid by Debtor for the Porsche.  Attached
13 | as Exhibit "7" is a true and correct copy of the December 14th Letter.  No response was
14 | ever received from the Debtor.

15 |

16 |        12.     On March 31, 2005, Plaintiff contacted the Los Angeles Police
17 | Department, who investigated this matter as an auto theft.  A police report was prepared on
18 | April 8, 2005.  Attached as Exhibit "8" is a true copy of the police report.

19 |

20 |        13.     Plaintiff is informed and believes that, upon questioning by the police,
21 | Debtor admitted that he sold Plaintiff's vehicle without Plaintiff's knowledge or consent
22 | and that he simply retained both Plaintiff's money and the money paid by the third party
23 | purchaser.

24 |

25 |        14.     Plaintiff is informed and believes that the Porsche was sold by Debtor
26 | without Plaintiff's knowledge or consent to Anthony Jordan in September 2004 for a price
27 | of $100,000.

28 |

-4-

COMPLAINT TO DETERMINE
NONDISCHARGEABILTY OF DEBT

1       15.     Debtor filed his Chapter 7 petition on March 22, 2005. The Plaintiff's

2 claim is listed on the Debtor's Schedule F under the name Thomas T. Bohannon in the

3 amount of $200,034.00, which is the amount paid by Plaintiff for the car that Debtor then

4 sold in violation of Plaintiff's ownership of the car.

5

6                           **FIRST CAUSE OF ACTION**

7                 [To Have Plaintiff's Claim Determined to Be

8            Nondischargeable Under 11 U.S.C. § 523(a)(6)]

9

10       16.     Plaintiff realleges and incorporates by reference the allegations of

11 paragraphs 1 through 15, above.

12

13       17.     Debtor's act of knowingly selling the Porsche twice, first to Plaintiff

14 for $200,034 and then to a different individual while retaining the entire purchase price

15 paid by Plaintiff, was a conversion of Plaintiff's property and constituted willful and

16 malicious injury in the amount of $200,034. By reason of such conduct, Plaintiff's claim is

17 nondischargeable under 11 U.S.C. § 523(a)(6).

18

19                      **SECOND CAUSE OF ACTION**

20                 [To Have Plaintiff's Claim Determined to Be

21            Nondischargeable Under 11 U.S.C. § 523(a)(4)]

22       18.     Plaintiff realleges and incorporates by reference the allegations of

23 paragraphs 1 through 15, above.

24

25       19.     Debtor's acts of 1) knowingly selling the Porsche twice, first to

26 Plaintiff and then to a different individual in violation of Plaintiff's specific instructions to

27 keep Plaintiff's Porsche "in a safe place" during the resolution of the parties' dispute and 2)

28 failing to return the purchase price to Plaintiff constituted an embezzlement of Plaintiff's

1  funds.  By reason of such conduct, Plaintiff's claim is nondischargeable under 11 U.S.C.

2  § 523(a)(4).

3

4          20.      In the alternative, Debtor's act of knowingly selling the Porsche twice,

5  first to Plaintiff and then to a different individual without Plaintiff's knowledge while

6  retaining the entire purchase price paid by Plaintiff, constituted larceny of $200,034.  By

7  reason of such conduct, Plaintiff's claim is nondischargeable under 11 U.S.C. § 523(a)(4).

8

9                          **THIRD CAUSE OF ACTION**

10                  [To Have Plaintiff's Claim Determined to Be

11              Nondischargeable Under 11 U.S.C. § 523(a)(2)(A)]

12          21.      Plaintiff realleges and incorporates by reference the allegations of

13  paragraphs 1 through 15, above.

14

15          22.      Debtor's agreement to sell the Porsche to Plaintiff constituted a

16  representation that the $200,034.00 paid by Plaintiff would be used for the purchase of the

17  Porsche for the exclusive benefit of Plaintiff as owner.  Debtor accepted $200,034 from

18  Plaintiff pursuant to such representation but shortly thereafter sold the Porsche to a third

19  party and retained all funds obtained from both Plaintiff and the third party from the sale.

20  By accepting the Porsche's full purchase price from the Plaintiff, and then selling the

21  Porsche to a different person without disclosing the sale to Plaintiff and not returning any

22  funds to Plaintiff, Debtor acquired Plaintiff's money by false pretenses, a false

23  representation or actual fraud, making Plaintiff's claim nondischargeable under 11 U.S.C.

24  § 523(a)(2)(A).

25

26

27

28

1

## PRAYER FOR RELIEF

2      WHEREFORE, Plaintiff Bohannon Development Corporation prays:

3

4          1.      That Bohannon's claim in the amount of $200,034 be determined to be

5  a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A), 523(a)(4) and 523(a)(6);

6

7          2.      That Plaintiff's reasonable fees and expenses incurred in pursuing this

8  action for the benefit of this estate and its creditors be awarded; and

9

10         3.      For such other and further relief as the Court deems appropriate.

11

12  DATED:  June 24, 2005

13                          SHEPPARD MULLIN RICHTER & HAMPTON LLP

14

15                  By    _Richard W. Brunette_

16                          RICHARD W. BRUNETTE

17                          Attorneys for Plaintiff
                            BOHANNON DEVELOPMENT
18                          CORPORATION

19

20

21

22

23

24

25

26

27

28

COMPLAINT TO DETERMINE
NONDISCHARGEABILTY OF DEBT

**EXHIBIT "1"**

# SALES ORDER

Page: 1

*By Design*

By Design Automotive Group, Inc.
3074 S. Robertson Blvd.
Los Angeles, CA 90034
(310) 559-9670

ORDER NUMBER: 0013086
ORDER DATE: 10/30/2003

SALESPERSON: AL
CUSTOMER NO: TOMBOHA

SOLD TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

SHIP TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

PHONE NO: 915-478-1874

| CUSTOMER P.O. | SHIP VIA | | F.O.B. | | TERMS No Terms | | |
|---|---|---|---|---|---|---|---|
| ITEM NUMBER | UNIT | ORDERED | SHIPPED | | BACK ORDER | PRICE | AMOUNT |
| 21011199640 996TT REMUS EXHAUST | EACH | 1.00 | WHSE: MN | 0.00 | 0.00 | 0.00 | 0.00 |
| 99611198101 996 TT SPORT EXHAUST TIP L | ONE | 1.00 | WHSE: MN | 0.00 | 0.00 | 350.00 | 350.00 |
| 99611198201 996 TT EXHAUST TIP R | ONE | 1.00 | WHSE: MN | 0.00 | 0.00 | 350.00 | 350.00 |
| /INSTAL INSTALL EXHAUST | | | | | | | 380.00 |
| /INSTAL LEATHER SUNVISORS | | | | | | | 500.00 |
| 99650531130G2X 996 GT2 FRONT BUMPER COVER | EACH | 1.00 | WHSE: MN | 0.00 | 0.00 | 4,200.00 | 4,200.00 |
| /PAINT PAINT BUMPER | | | | | | | 800.00 |
| /INSTAL INSTALL BUMPER | | | | | | | 100.00 |
| 512996GT2 GT2 CARBON/KEVLAR WING | EACH | 1.00 | WHSE: MN | 0.00 | 0.00 | 5,000.00 | 5,000.00 |
| /PAINT PAINT REAR WING | | | | | | | 750.00 |
| /INSTAL INSTALL WING | | | | | | | 200.00 |
| /INSTAL TE CUSTOM HOOD | | | | | | | 2,500.00 |
| /PAINT PAINT AND BLEND HOOD | | | | | | | 800.00 |
| 996100380009 TECHART 996TT SIDE ROCKER | EACH | 1.00 | WHSE: MN | 0.00 | 0.00 | 1,600.00 | 1,600.00 |
| 996100480009 996 TT TECHART REAR SIDE AIR I | EACH | 1.00 | WHSE: MN | 0.00 | 0.00 | 675.00 | 675.00 |
| /PAINT PAINT & INSTALL SIDES | | | | | | | 800.00 |
| BYDESIGNAUDIO BY DESIGN AUDIO SYSTEM | EACH | 1.00 | WHSE: MN | 0.00 | 0.00 | 6,500.00 | 6,500.00 |

CONTINUED

## SALES ORDER

ORDER NUMBER: 0013086
ORDER DATE: 10/30/2003

By Design Automotive Group, Inc.
3074 S. Robertson Blvd.
Los Angeles, CA 90034
(310) 559-9670

SALESPERSON: AL
CUSTOMER NO: TOMBOHA

**SOLD TO:**
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

PHONE NO:    915-478-1874

**SHIP TO:**
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS No Terms | | | |
|---|---|---|---|---|---|---|
| ITEM NUMBER | UNIT | ORDERED | SHIPPED | BACK ORDER | PRICE | AMOUNT |
| K40RADAR K40 RADAR SYSTEM INSTALLED | 1 | 1.00 | 0.00 WHSE: MN | 0.00 | 2,200.00 | 2,200.00 |
| /INSTAL CAR KIT W/CONSOLE | | | | | | 1,200.00 |
| GM58848HO BILSTEIN PSS9 996TT COILOVER | EACH | 1.00 | 0.00 WHSE: MN | 0.00 | 3,100.00 | 3,100.00 |
| 996TRGDROPLINK DROP LINK FOR 996TT | EACH | 1.00 | 0.00 WHSE: MN | 0.00 | 495.00 | 495.00 |
| /INSTAL INSTALL COILOVERS | | | | | | 350.00 |
| /ALIGN4 ALIGNMENT 4 WD | | | | | | 150.00 |
| GIAC996TT 996TT ECU UPGRADE | EACH | 1.00 | 0.00 WHSE: MN | 0.00 | 4,000.00 | 4,000.00 |
| /INSTAL K16/24 TURBOS | | | | | | 3,800.00 |
| /INSTAL INSTALL TURBOS | | | | | | 500.00 |
| KNTT K+N AIRFILTER SYSTEM 2001 TT | ONE | 1.00 | 0.00 WHSE: MN | 0.00 | 175.00 | 175.00 |
| CARP96T350 GT2 BIG BRAKE KIT | EACH | 1.00 | 0.00 WHSE: MN | 0.00 | 7,500.00 | 7,500.00 |
| /INSTAL INSTALL BRAKE KIT | | | | | | 380.00 |
| ROH19X11ET27 ROH MODENA 19X11 ET=27 5X130 | EACH | 2.00 | 0.00 WHSE: MN | 0.00 | 0.00 | 0.0 |
| ROH19X8.5ET=50 ROH MODENA 19X8.5 ET 40 5X130 | EACH | 2.00 | 0.00 WHSE: MN | 0.00 | 0.00 | 0.0 |
| DUNSP9000235 DUNLOP SP9000 235/35/19 | ONE | 2.00 | 0.00 WHSE: MN | 0.00 | 325.00 | 650.0 |
| DUNSP9000305251 DUNLOP SP9000 305-25-19 | EACH | 2.00 | 0.00 WHSE: MN | 0.00 | 600.00 | 1,200. |

CONTINU

# SALES ORDER

Page: 3

*By Design*

By Design Automotive Group, Inc.
3074 S. Robertson Blvd.
Los Angeles, CA 90034
(310) 559-9670

ORDER NUMBER: 0013086
ORDER DATE: 10/30/2003

SALESPERSON: AL
CUSTOMER NO: TOMBOHA

SOLD TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

SHIP TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

PHONE NO: 915-478-1874

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS No Terms | | | |
|---|---|---|---|---|---|---|
| ITEM NUMBER | UNIT | ORDERED | SHIPPED | BACK ORDER | PRICE | AMOUNT |
| /MOUNT | | | | | | 80.00 |
| Mounting & Balancing | | | | | | |
| /TRADEIN | EACH | -1.00 | 0.00 | 0.00 | 1,850.00 | -1,850.00 |
| TRADE IN FACTORY WHEELS & TIRE | | | | | | |
| 99355921100 | ONE | 1.00 | 0.00 | 0.00 | 150.00 | 150.00 |
| PORSCHE CHROME HOOD EMBLEM | | WHSE: MN | | | | |
| 45135 | ONE | 1.00 | 0.00 | 0.00 | 325.00 | 325.00 |
| PORSCHE 996 B&M SHORT SHIFTE | | WHSE: MN | | | | |
| /INSTAL | | | | | | 220.00 |
| INSTALL SHIFTER | | | | | | |
| /INSTAL | | | | | | 450.00 |
| MESH INSERTS | | | | | | |
| /INSTAL | | | | | | 1,200.00 |
| LEATHER REAR CENTER CONSOLE | | | | | | |
| 99611098971 | EACH | 1.00 | 0.00 | 0.00 | 650.00 | 650.00 |
| GT2 INTERCOOLER FOR 996TT (LH) | | WHSE: MN | | | | |
| 99611099071 | EACH | 1.00 | 0.00 | 0.00 | 650.00 | 650.00 |
| GT2 INTERCOOLER FOR 996TT (RH) | | WHSE: MN | | | | |
| /INSTAL | | | | | | 380.00 |
| INSTALL INTERCOOLERS | | | | | | |
| DV30BLACK | EACH | 2.00 | 0.00 | 0.00 | 325.00 | 650.00 |
| BAILY DIVERTER VALVE KIT BLACK | | WHSE: MN | | | | |
| /INSTAL | | | | | | 190.00 |
| INSTALL DIVERTER VALVES | | | | | | |
| /INSTAL | | | | | | 150.00 |
| MODIFY AIRBOX | | | | | | |
| /TINT | | | | | | 250.00 |
| WINDOW TINT | | | | | | |
| 100424TURBO | ONE | 1.00 | 0.00 | 0.00 | 90.00 | 90.00 |
| 996 Turbo Dead Pedal W TURBO | | WHSE: MN | | | | |
| 100425TURBO | ONE | 1.00 | 0.00 | 0.00 | 185.00 | 185.00 |
| CG 996 Turbo Pedal Set w TURBO | | WHSE: MN | | | | |
| /INSTAL | | | | | | 95.00 |
| INSTALL PEDAL SET | | | | | | |

CONTINUED

# SALES ORDER

Page: 4

*By Design*

**By Design Automotive Group, Inc.**
3074 S. Robertson Blvd.
Los Angeles, CA 90034
(310) 559-9670

ORDER NUMBER: 0013086
ORDER DATE: 10/30/2003

SALESPERSON: AL
CUSTOMER NO: TOMBOHA

SOLD TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

SHIP TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX 79912

PHONE NO:       915-478-1874

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS No Terms | | |
|---|---|---|---|---|---|
| ITEM NUMBER | UNIT | ORDERED | SHIPPED | BACK ORDER | PRICE | AMOUNT |

| ITEM NUMBER | UNIT | ORDERED | SHIPPED | BACK ORDER | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 99642498115VRJ | EACH | 1.00 | 0.00 | 0.00 | 375.00 | 375.00 |
| 996 ALUM & LEATHER SHIFTER BLA | | | WHSE: MN | | | |
| 99642498022 | ONE | 1.00 | 0.00 | 0.00 | 400.00 | 400.00 |
| 996 E-BRAKE ALUMINIUM BLACK | | | WHSE: MN | | | |
| /INSTAL | | | | | | 95.00 |
| INSTALL SHIFTER AND EBRAKE | | | | | | |
| 996803980038YR | EACH | 1.00 | 0.00 | 0.00 | 550.00 | 550.00 |
| 3 SPOKE BLK LEATHR AIRBAG W/SI | | | WHSE: MN | | | |
| /INSTAL | | | | | | 95.00 |
| INSTALL AIRBAG | | | | | | |
| /INSTAL | | | | | | 45.00 |
| INSTALL BATTERY DISCONNECT MOD | | | | | | |
| 4320256 | ONE | 1.00 | 0.00 | 0.00 | 85.00 | 85.00 |
| BATTERY MAINTAINER | | | WHSE: MN | | | |
| WAP05008711 | ONE | 1.00 | 0.00 | 0.00 | 64.00 | 64.00 |
| PORSCHE UMBRELLA | | | WHSE: MN | | | |

*REAR SHELF TRAY ?*

I authorize the above purchase and labor.
Not responsible for goods left over 72 Hours.

CC NUMBER                         AUTH NUMBER

*CK # 0008990  $15,000.⁰⁰  11-18-03*

| | |
|---|---|
| Net Order: | 56,779.00 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Order Total: | 56,779.00 |
| Less Deposit: | 0.00 |
| Order Balance: | 56,779.00 |

**EXHIBIT "2"**

**RETAIL INSTALLMENT SALE CONTRACT — SIMPLE INTEREST FINANCE CHARGE**

Dealer Number 56519    Contract Number ____    R.O.S. Number 0    Stock Number 675176

| Buyer (and Co-Buyer) Name and Address (Including County and Zip Code) | Creditor - Seller (Name and Address) |
|---|---|
| THOMAS BOHANNON   BOHANNON DEVELOPMENT, CORP. 414 WEST HARRIMAN ST, BEND , OR 97701 | Sunset European Motorcars 8929 Sunset Blvd West Hollywood,CA 90069 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | SOLD AS EQUIPPED / SUBJECT TO LENDER'S CREDIT APPROVAL |
|---|---|---|---|---|---|
| USED | 2004 | PORSCHE 911 TURBO | 110 | WP0CB299349675176 | Primary Use For Which Purchased □ personal, family or household ☑ business □ agricultural |

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ .00 (e) |
|---|---|---|---|---|
| 5.89 % | $ .00(e) | $ 141240.00 | $ 141240.00(e) | $ 141240.00(e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | .00 | |
| One Payment of | | |
| 0  Payments | 141240.00 | Monthly, Beginning 12/18/04 |
| One Final Payment | 141240.00 | 12/18/04 |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

**ITEMIZATION OF THE AMOUNT FINANCED**

1. Total Cash Price .
   A. Cash Price of Motor Vehicle and Accessories    $ 141000.00(A)
      1. Cash Price Vehicle    $ 141000.00
      2. Cash Price Accessories    $ .00
   B. Document Preparation Fee (not a governmental fee)    $ 150.00 (B)
   C. Smog Fee Paid to Seller    $ 45.00 (C)
   D. Sales Tax (on A + B + C)    $ .00 (D)
   E. (Optional) EPA New Vehicle Report of Sale or Renewal Transaction Fee*    $ .00 (E)
   F. (Optional) Service Contract* /MAINTENANCE    $ .00 (F)
   G. Prior Credit or Lease Balance paid by Seller to
      N/A    $ .00 (G)
      (see downpayment and trade-in calculation)
   H. (Optional) Gap Contract (to whom paid)*    $ .00 (H)
   I. Other (to whom paid)*    $ .00 (I)
      For ____
   Total Cash Price (A through I)    $ 141195.00(1)
2. Amounts Paid to Public Officials
   A. License Fees    ESTIMATED    $ .00 (A)
   B. Registration/Transfer/Titling Fees    $ INCL (B)
   C. California Tire Fees*    $ .00 (C)
   D. Other    $ .00 (D)
   E. Other    $ N/A (E)
   Total Official Fees (A through E)    $ .00(2)
3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column a + b)*    $ .00 (3)
4. Smog Certification Fee Paid to State    $ 45.00 (4)
5. Subtotal (1 through 4)    $ 141240.00(5)
6. Total Downpayment
   A. Agreed Trade-In Value  Yr ___ Make ___    $ .00 (A)
      Model ___ Odom ___
      VIN ___
   B. Less Prior Credit or Lease Balance    $ .00 (B)
   C. Net Trade-In (A less B) (indicate if a negative number)    $ .00 (C)
   D. Deferred Downpayment    $ .00 (D)
   E. Manufacturer's Rebate    $ N/A (E)
   F. Other    $ N/A (F)
   G. Cash    $ .00 (G)
   Total Downpayment (C through G)    $ .00 (6)
   (If negative, enter zero and enter the amount less than zero as a positive number on line 1G above.)
7. Amount Financed (5 less 6)    $ 141240.00 (7)
*Seller may keep part of these amounts.

**STATEMENT OF INSURANCE**
NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker.

**Vehicle Insurance**

| | Term | Premium |
|---|---|---|
| $ NONE Ded. Comp., Fire & Theft | 11 Mos. $ |
| $ NONE Ded. Collision | N/A Mos. $ |
| Bodily Injury  $ NONE Limits | 11 Mos. $ |
| Property Damage $ NONE Limits | 11 Mos. $ |
| Medical  0 | 11 Mos. $ |
| $ N/A | 5 Mos. $ |
| Total Vehicle Insurance Premiums | $ (a) |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X ____
Co-Buyer X ____
Seller X ____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Application for Optional Credit Insurance**
□ Credit Life: □ Buyer □ Co-Buyer □ Both
□ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | 11 Mos. | | $ NONE |
| Credit Disability | 11 Mos. | | $ N/A |
| Total Credit Insurance Premiums | | $ NONE (b) |

Insurance Company Name ____
Home Office Address ____

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay off all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).

11/18/04 Buyer Signature ____ Age ___
11/18/04 Co-Buyer Signature ____ Age ___

OPTIONAL GAP CONTRACT A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra cost. If you choose to buy a gap contract, the cost is shown in Item 1H. See your gap contract for details on the protection it provides.
Term NONE Mos.    Name of Gap Contract NONE
Buyer X ____

E. Manufacturer's _____ $ _____ N/A _____ (E)

F. Other _____ $ _____ N/A _____ (F)

G. Cash _____ $ _____ .00 _____ (G)

Total Down payment (C through G) _____ $ _____ .00 _____ (6)

(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1G above)

7. Amount Financed (5 less 6) _____ $ _ 141240.00 _ (7)

*Seller may keep part of these amounts.

---

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: _____ N/A _____

Amount $ N/A _____ Finance Charge $ N/A

Total $ N/A _____ Payable in _ N/A _

installments of $ N/A _____ $ _ N/A

from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: _____

---

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra cost. If you choose to buy a gap contract, the cost is shown in item 1H. See your gap contract for details on the protection it provides.

Term _____ Mos _____ Name of Gap Contract

Buyer X _____

**OPTIONAL SERVICE CONTRACT** You want to purchase a service contract written with the following company for the term shown below for the price shown in item 1F.

Company _____

Term ____ Mos or _____ Mi

Buyer X _____

**HOW THIS CONTRACT CAN BE CHANGED** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

X _____  X _____
Buyer Initials          Co-Buyer Initials

---

**NOTICE OF RESCISSION RIGHTS**
If Buyer and Co-Buyer sign here, the provisions of the Rescission Rights section on the back giving the Seller the right to rescind if Seller is unable to assign this contract to a financial institution will apply.

Buyer X _____  Co-Buyer X _____

---

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____, _____ Year _____ SELLER'S INITIALS _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLER DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.

FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____  X _____

Representations of Buyer: Seller has relied on the truth and accuracy of the information provided by you in connection with the Trade-In Vehicle. You represent that you have given a true payoff amount on the vehicle traded in. If the payoff amount is more than the amount shown above in item 6.B as "Prior Credit or Lease Balance," you must pay Seller the excess on demand. If the payoff amount is less than the amount shown above item 6.B as "Prior Credit or Lease Balance," Seller will refund the difference to you.

Buyer X _____  Co-Buyer X _____

Notice to buyer:
(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____  Co-Buyer Signature X _____

---

**THERE IS NO COOLING OFF PERIOD**
California law does not provide for a "cooling off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT BEFORE SIGNING BELOW.
YOU ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF THIS CONTRACT AND EACH OTHER DOCUMENT THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS.

Buyer Signature X _____ Date _ 11/18/03 _ Co-Buyer Signature X _____ Date _ 11/1_

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other Owner Signature X _____  Address __ 8928 Sunset Blvd West Hollywood, CA 9_

Seller Signature X _ Sunset European Motorcars _ Date _ 11/18/03 _ By _____  Title _ MGR _

LAW FORM NO. 553-CA (REV. 1/03) U.S. PATENT NO. D460,762
©2003 Reynolds and Reynolds TO ORDER: www.reysource.com, 1-800-344-0996, fax 1-800-531-9055.
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER / TRUTH-IN-LENDING COPY

**OTHER IMPORTANT AGREEMENTS**

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security interest.**
You give us a security interest in:
- The vehicle and all parts or goods installed on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance or service or gap contracts we finance for you; and
- All proceeds from insurance or service or gap contracts or other incidental contracts we finance for you. This includes any refunds of premiums.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. This insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance or service or gap contract charges.** If we obtain a refund on insurance or service or gap contracts or other incidental contracts, we will subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.

**g. What we may do about optional insurance or service or gap contracts.** This contract may contain charges for optional insurance or service or gap contracts or other incidental optional products or services charges. If we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle.

## 4. WARRANTIES SELLER DISCLAIMS

**If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

## 5.

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

## 6. Applicable Law

Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

## 7. Warranties of Buyer.

You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

### CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you can.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects your claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the

Percentage Rate shown on the front of this contract.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance or service or gap contract charges.** If we obtain a refund on insurance or service or gap contracts or other incidental contracts, we will subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means:
   - You do not pay any payment on time;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - The vehicle is lost, damaged or destroyed.
   - You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a collection fee not to exceed $15 if any check you give to us is dishonored.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid it on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we then be able to take action to collect or foreclose or repossess any collateral you may have given.

---

### Rescission Rights

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may rescind (cancel) the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to rescind. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you assume all risk of loss or damage to the vehicle. You will pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

| Seller assigns its interest in this contract to | | | (Assignee) at (address) |
|---|---|---|---|
| | | | under the terms of Seller's agreement(s) with Assignee. |
| ☐ Assigned with recourse | ☐ Assigned without recourse | ☐ Assigned with limited recourse | |
| Seller | By | | Title |

Form No. 553-CA 1/03

**EXHIBIT "3"**

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER - SEE REVERSE SIDE FOR COMPLETE SECURITY FEATURES

**BOHANNON DEVELOPMENT CORPORATION**
5525 N. STANTON
EL PASO, TEXAS 79912

CHASE
CHASE BANK OF TEXAS, N.A.
El Paso Region, 201 East Main
El Paso, Texas 79901
32-115/1110

CHECK NO. 0009121

DATE 2-2-04 TB

AMOUNT OF CHECK
$43,794 00/100

PAY TO THE ORDER OF By Design

Forty three thousand seven hundred ninety four + 00/100

VOID AFTER 90 DAYS

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

⑆009121⑆ ⑈111001150⑈ 15000206805⑆ ⑆0004379400⑆

---

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER - SEE REVERSE SIDE FOR COMPLETE SECURITY FEATURES

**BOHANNON DEVELOPMENT CORPORATION**
5525 N. STANTON
EL PASO, TEXAS 79912

CHASE
CHASE BANK OF TEXAS, N.A.
El Paso Region, 201 East Main
El Paso, Texas 79901
32-115/1110

CHECK NO. 0009123

DATE 11-18-03

AMOUNT OF CHECK
141,240 00

PAY TO THE ORDER OF By Design

one hundred forty one thousand, two hundred forty dollars + 00/100

VOID AFTER 90 DAYS

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

⑆009123⑆ ⑈111001150⑈ 15000206805⑆ ⑆0014124000⑆

---

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER - SEE REVERSE SIDE FOR COMPLETE SECURITY FEATURES

**BOHANNON DEVELOPMENT CORPORATION**
5525 N. STANTON
EL PASO, TEXAS 79912

CHASE
CHASE BANK OF TEXAS, N.A.
El Paso Region, 201 East Main
El Paso, Texas 79901
32-115/1110

CHECK NO. 0008990

DATE 11-18-03

AMOUNT OF CHECK
15,000. 00

PAY TO THE ORDER OF By Design

Fifteen thousand dollars + 00/100

VOID AFTER 90 DAYS

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

⑆008990⑆ ⑈111001150⑈ 15000206805⑆ ⑆0001500000⑆

**EXHIBIT "4"**

*Big Design*

3074 South Robertson Boulevard
Los Angeles, California 90034
Tel: 888-993-2996, Fax: 310-559-9689

8929 W. Sunset Boulevard
West Hollywood, California 90069
Tel: 310-289-8830. Fax: 310-289-8820

sales@bydesignmail.com
www.bydesignauto.com
www.bydesignautomotive.com

# FAX



To: TOM BOHANNON          From: MICHAEL MANSOURI

**Fax:** 915 -                    **Pages: (including cover)**

**Phone:** 915-478-1874        **Date:** 01-26-04

**Re:** 1 PORSCHE 996TT.        **CC:**

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

• Comments:

PLEASE FIND ENCLOSED.

YOUR ORIGINAL. SALES ORDER
& NEW SALES ORDER WITH NEW Add ON'S &
REMOVALS

Add's  ① WATER INJECTED INTERCOOLER
       ② SWITCHABLE 3 - PROGRAM

Remove ① TRADE IN BRAKES.
       ② TRADE IN WHEELS & TIRES.
       ③ NO AUDIO.

## SALES ORDER

ORDER NUMBER: 0013086
ORDER DATE: 10/30/2003

By Design Automotive Group, Inc.
3074 S. Robertson Blvd.
Los Angeles, CA 90034
(310) 559-9670

SALESPERSON: AL
CUSTOMER NO: TOMBOHA

SOLD TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX   79912

SHIP TO:
TOM BOHANNON
5525 N. STANTON SUITE 28C
El Paso, TX   79912

PHONE NO:      915-478-1874

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS No Terms | | |
|---|---|---|---|---|---|
| ITEM NUMBER | UNIT | ORDERED | SHIPPED | BACK ORDER | PRICE | AMOUNT |

*REVISED MODIFICATION TOTAL*

I authorize the above purchase and labor.
Not responsible for goods left over 72 Hours.

CC NUMBER                          AUTH NUMBER

| | |
|---|---|
| Net Order: | 59,164.00 |
| Less Discount: | 0.00 |
| Freight: | 0.00 |
| Sales Tax: | 0.00 |
| Order Total: | 59,164.00 |
| Less Deposit: | 15,000.00 |
| Order Balance: | 44,164.00 |

**EXHIBIT "5"**

5525 N. Stanton St. #28C
El Paso, TX 79912


March 4, 2004


Michael Mansouri
By Design Automotive
8929 Sunset Blvd.
W. Hollywood, CA 90069

Dear Michael Mansouri,

I noticed that the exhaust tips that I had paid extra for had been removed and standard exhaust tips installed. Please leave the standard ones on for now until we resolve the other issues in this letter. The tires are still scraping the inside on the front of the car. Are these wheels and tire too big?

I have left two messages for someone named Sam who said you wanted me to visit with him and he has not returned the calls.

I have decided after reading the article in European Car not to keep the car. I had no idea when you told me European Car was interested in doing an article on the car that it was a tuner shoot out and the car would be put under this kind of stress. It is even potentially more harmful with the amount of mileage that was on the car and completely contrary to the owner's manual. I had a business associate who wanted to buy it but he is having second thoughts after seeing the article. You encouraged me to let it be in the article because it would help resale and it appears it is having the opposite effect. Please contact me and lets see if we can find a friendly resolution to this matter. In the meantime, please do not title the car or take it to San Francisco for the Excellence magazine article. Please keep it in a safe place until we reach a settlement of this issue. I look forward to hearing from you at your earliest convenience.


Sincerely,

Tom Bohannon
df

**EXHIBIT "6"**

| Recalculate Warranty |

➤ CARFAX Warranty Check provides an **estimate** of this vehicle's remaining warranty coverage. It does not take into account some vehicle history events. For example, major accidents resulting in Salvage or Junk titles that may void the original manufacturer warranty or ownership transfers that may decrease warranty coverage. This warranty information is only valid for vehicles manufactured for sale in the US. Complete warranty coverage information is available for this vehicle at the <u>PORSCHE web site</u>.

**Warranty Calculator FAQs:**
<u>Warranty FAQs</u> | <u>Glossary</u> | <u>CARFAX Help Center</u>

## CARFAX Detailed Vehicle History    📋<u>Run Another Report</u>   🖨<u>Print Report</u>

CARFAX searched more than 3 billion records from over 5,300 sources and found **8 record(s)** for this 2004 PORSCHE 911 TURBO CABRIOLET (WP0CB29934S675176).

| Date: | Mileage Reading: | Source: | General Comments: |
|---|---|---|---|
| 09/25/2003 | 18 | Service Facility | Vehicle serviced |
| 09/28/2003 | | Dealer Inventory California | Vehicle sold |
| 09/28/2003 | 25 | California Motor Vehicle Dept. Beverly Hills, CA | Title issued First owner reported Loan or lien reported Registered as lease vehicle |
| 09/28/2003 | | California Motor Vehicle Dept. | Registered as personal vehicle |
| 05/01/2004 | 2,663 | California Motor Vehicle Dept. Granada Hills, CA | Title issued New owner reported |
| 05/06/2004 | | California Inspection Station Los Angeles, CA | |
| 05/06/2004 | | California Inspection Station Los Angeles, CA | Passed emissions inspection |
| 09/17/2004 | | Porsche Cars North America | No recalls open for repair |

**Detailed Vehicle History Definitions:**

- **First Owner**
  When the first owner(s) obtains a title from a Department of Motor Vehicles as proof of ownership.

**EXHIBIT "7"**



**BOHANNON
DEVELOPMENT
CORPORATION**

<table>
<tr><td colspan="2">U.S. Postal Service™<br>**CERTIFIED MAIL**™ **RECEIPT**<br>(Domestic Mail Only; No Insurance Coverage Provided)</td></tr>
<tr><td colspan="2">For delivery information visit our website at www.usps.com®</td></tr>
<tr><td colspan="2">OFFICIAL USE</td></tr>
<tr><td>Postage</td><td>$ .37</td></tr>
<tr><td>Certified Fee</td><td>2.30</td></tr>
<tr><td>Return Receipt Fee<br>(Endorsement Required)</td><td>1.75</td></tr>
<tr><td>Restricted Delivery Fee<br>(Endorsement Required)</td><td></td></tr>
<tr><td>Total Postage & Fees</td><td>$ 4.42</td></tr>
</table>

7004 0750 0000 7994 4363

Sent To MR. MICHAEL MANSOURI (BY DESIGN AUTO.
Street, Apt. No.;
or PO Box No. 3074 S. ROBERTSON BLVD.
City, State, ZIP+4 LOS ANGELES, CA 90034
PS Form 3800, June 2002 See Reverse for Instructions

December 14, 2004

Mr. Michael Mansouri
By Design Automotive Group
Sunset European Motorcars
3074 S. Robertson Boulevard
Los Angeles, CA 90034

Re: **2004 Porsche 911 Turbo**
     **Vin #WP0CB29934S675176**

Dear Mr. Mansouri,

Based on the current situation, I wanted to memorialize some of the facts that exist:

On November 18, 2003 I signed a contract to purchase the above referenced vehicle. The purchase price was indicated as $141,240.00. On the same day I provided 2 checks to By Design Automotive Group. The amounts of the checks were $141,240.00 and $15,000.00; totaling $156,240.00

On February 2, 2004 I provided a check to By Design Automotive Group in the amount of $43,794.00

The 3 checks detailed above have been cashed by By Design Automotive Group. The total amount I have paid is $200,034.00. The amount in excess of the stated purchase price was to pay for certain vehicle modifications.

Prior to and upon completion, I was not satisfied with the vehicle, its modifications, its condition as well as other matters. The vehicle was never titled in my name and I never took physical possession. You and I have had numerous discussions regarding these matters, as well as the possible sale of the vehicle.

5525 N. STANTON
EL PASO, TEXAS 79912
(915) 833-3322
FAX (915) 833-1717

It is my understanding the vehicle was sold to another individual in May 2004. I have a report indicating the title was transferred and a new owner reported to the California Motor Vehicle Department on May 1, 2004. I was never told of this or any other sale by you, nor did I receive any funds from the sale.

I now understand the vehicle title has again been transferred to another individual. Again, I was never told of any sale of the vehicle by you, nor have I received any funds from any sale.

Over the past couple months Derek Wiseman and Jared Waldman have been working with you to resolve their own vehicle / title / money issues with you and have also been doing the same on my behalf.

I want to make it extremely clear; you have attempted to sell a vehicle to me with certain modifications and history that I did not request nor desire. That subsequently you sold this same vehicle to another individual without my permission or knowledge. That you kept all the funds from the sale. That you currently owe me $200,034.00 plus interest.

At the present time, it does not appear that substantial progress has been made in the resolution of this matter. Unless I am provided a definitive plan by you, acceptable to me, which results in the return of $200,034.00 plus interest that you owe me, and obtain implementation of this plan by January 12, 2005, I will have no choice but to consider all legal options available to me.

Thomas T. Bohannon

**EXHIBIT "8"**

Page 1 of 3    509600326

☐ COMBINED EVID. REPORT
☐ MULTIPLE DRS ON THIS REPORT

**Los Angeles Police Department**
**PRELIMINARY INVESTIGATION of**
GRAND THEFT

INVEST. DIV.: WLA    DR: 0508 791248

**PRELIMINARY CASE SCREENING**
☐ SUSPECT / VEHICLE NOT SEEN    5-11
☐ PRINTS OR OTHER EVIDENCE NOT PRESENT
☐ NO M.O. CONTACT
☐ PROPERTY LOSS LESS THAN $5000
☐ NO SERIOUS INJURY TO VICTIM
☑ ONLY ONE VICTIM INVOLVED    AN-017

LAST NAME, FIRST, MIDDLE: BOHANNON, TOM
SEX M  DESC W  AGE 546-8-48

VICTIM ADDRESS: 5525 N. STANTON #20C  EL PASO TX 79912   PHONE 933-3322

**PREMISES:** AUTO REPAIR BUSINESS
DR. LIC. NO.: 09471049 TX   FOREIGN LANGUAGE: OCCUPATION: R.E. DEVELOPER

ENTRY / POINT OF ENTRY / POINT OF EXIT
LOCATION OF OCCURRENCE: 3074 S. ROBERTSON BL. LA  ☐ RES ☐ BUS 898
DATE & TIME OF OCCURRENCE: 5-1-2004  0800
DATE REPORTED TO PD: 3-31-05  1200
TYPE PROPERTY STOLEN/LOST/DAMAGED: VEHICLE  ☐ 3-4 GIVEN
STOLEN/LOST: 200,084.00  RECOVERED: 0

VICT'S VEH: 04 PORSCHE 911 BLK CONV VIN# WP0CB2 9934 5675176

**MO:** VICTIM PURCHASES VEHICLE PLUS UPGRADES FROM SUSPECT. SUSPECT SELLS VICTIM'S VEHICLE WITHOUT HIS KNOWLEDGE OR PERMISSION AND KEEPS MONEY.

☐ MOTIVATED BY HATRED / PREJUDICE   ☐ DOMESTIC VIOLENCE

**REPORTING EMPLOYEE(S):** BRUMAGIN  21354  WLA DET
PERSON REPORTING: x TELEPHONE

**SUSP'S VEHICLE** YEAR MAKE MODEL TYPE

| SEX | DESC | HAIR | EYES | HGT | WGT | AGE | CLOTHING | NAME, ADDRESS, DOB |
|---|---|---|---|---|---|---|---|---|
| M | W | BN | BRO | 5-7 | 185 | 36 | | MANSOURI, MICHAEL DOB 9-1-68  1721 REDCLIFF ST SILVER LAKE CA 90026 |

**INVOLVED PERSONS**

**APPROVAL AND REVIEW:** DIIBE/9M  22894  4/8/05 1142 08 ASH

**CONTINUATION SHEET**

Los Angeles Police Department

| PAGE NO. 2. | TYPE OF REPORT GRAND THEFT | | | | BOOKING NO. | DR NO 09248 0508 |
|---|---|---|---|---|---|---|
| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALUE |

**SOURCE OF ACTIVITY:**

On 3-31-05, Victim Bohannon contacted West Los Angeles auto theft detectives regarding the theft of a new Porsche that he had purchased from "By Design Automotive Group," located at 3074 S. Robertson Blvd.

**INVESTIGATION:**

Bohannon stated that he met "By Design" owner, Michael Mansouri, in the fall of 2003 and agreed to purchase a new Porsche from Mansouri's company, "By Design Automotive Group"/ " Sunset European Motor Cars." On 11-8-03, Bohannon wrote a $141,240.00 check, payable to "By Design," for the 2004 Porsche (VIN# WP0CB29934S675176). Bohannon provided copies of the sales contract that he received from Mansouri and his cashed check to detectives. The contract indicated that the vehicle had one hundred miles on the odometer.

Bohannon agreed to pay an additional sixty thousand dollars to "By Design" for upgrades to his vehicle. Bohannon wrote two checks to "By Design" for the parts and labor to complete the improvements. The first check was written on 11-18-03 for $15,000.00 and the other for $43,794.00, on 2-2-04. All checks, which totaled $200,034.00, were cashed.

Bohannon dealt with Mansouri, exclusively, during the build-up of his vehicle. The improvements were made and Bohannon came to Los Angeles, on 1-9-04, to view his finished vehicle, which was being displayed in a local car show by Mansouri. On 1-12-04, Bohannon test-drove the Porsche with Mansouri. Bohannon was unhappy with some of the changes Mansouri made to his vehicle and Mansouri assured him he would correct the problems. Bohannon re-inspected the vehicle on 2-17-04 and drove it for several days before returning it to Mansouri. Bohannon was still unsatisfied with the vehicle and later discovered that Mansouri had entered Bohannon's vehicle in a performance contest with other Porsches without his knowledge or permission. Bohannon's Porsche, and the vehicles it competed against, were subjected to rigorous braking and speed contests according to an article in European Car magazine.

Bohannon came to Los Angeles on 9-2-04, after several unanswered calls to Monsouri. A salesman from "By Design" told Bohannon he was not familiar with the vehicle. Neither the Porsche nor Mansouri were at the location. On 9-7-04, Bohannon returned to the business, unannounced, and observed both his vehicle and Mansouri on the showroom floor. Bohannon expressed his dissatisfaction with Mansouri. Mansouri apologized for the misunderstanding and assured Bohannon the matter would be resolved. Bohannon said he would be in contact and rushed to catch his flight back to Texas.

Since that time, Bohannon has made several phone calls and sent FAX's to Mansouri, none of which have been answered. Bohannon ran his vehicle through "CARFAX" and discovered that his Porsche had actually been sold to an unknown person in May 2004. Bohannon neither authorized the sale of his vehicle nor did he sign any documents releasing his interest in the vehicle. DMV records indicate that

## CONTINUATION SHEET

Los Angeles Police Department

| PAGE NO. 3 | TYPE OF REPORT | GRAND THEFT | | | BOOKING NO. | DR NO. 0508 |
|---|---|---|---|---|---|---|
| ITEM NO. | QU AN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALUE |

the vehicle was sold again on 3-30-05.

Bohannon provided investigators copies of the car sale and upgrade contracts, cancelled checks (payable to By Design), a chronolog of events, CARFAX, the European Car article, photos of Bohannon and his Porsche, and FAXs to and from Mansouri.

Investigators attempted to call Mansouri at his home but the number was disconnected. The phones at "By Design" have been taken off the hook. West Los Angeles patrol Officer W. Heider #27213 was directed to the location on an unrelated radio call, on 3-30-05. Heider stated that there were several customers waiting outside "By Design," who claimed the location had been closed for several days. They were visibly upset and concerned about the disposition of their vehicles. The location was locked and a security guard could provide no information. Heider, who knew Mansouri from prior dealings, recognized him at the location. Heider spoke to Mansouri, who advised him that he had dissolved his interest in the business the night before. Mansouri stated that he was no longer in the car business and now producing movies and living in Italy. The customers were ultimately allowed to recover their cars.

A DMV check revealed that Bohannon's Porsche had been licensed with DMV (5ENU069 CA) on 5-12-04. On 9-9-04, DMV received a transfer request from Anthony Jordan 20632 S. Vermont Ave. #23 Torrance, which they processed on 9-23-04. According to the printout, Jordan declared a purchase price of one hundred thousand dollars and the odometer read 2663 miles.

A subsequent check of DMV records indicates that Lilliana Martinez 3710 Hathaway Ave. #567, Long Beach purchased the vehicle, on 3-30-05, and submitted documents to DMV. The printout shows Martinez paid one hundred thousand dollars for the vehicle, which had an odometer reading of 5543 miles.

Photo documentation was ordered from DMV on 4-4-05.


INJURY: None

PHOTOGRAPHS: Bohannon supplied photos of his vehicle which were retained by investigators.

EVIDENCE: Bohannon supplied copies of the above mentioned documents, which were retained by investigators.

ADDITIONAL: None

| B. 104<br>(Rev. 8/99) | # ADVERSARY PROCEEDING SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(For Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Address | Address |

| ATTORNEYS (Firm Name, Address, and Telephone Number)<br><br>Bar ID: | ATTORNEYS (if known)<br><br>Bar ID: |
|---|---|
| Telephone #                    Fax # | Telephone #                    Fax # |

| PARTY (Check one box only)    1  U.S. PLAINTIFF    2  U.S. DEFENDANT    3  U.S. NOT A PARTY |
|---|

CAUSE OF ACTION  (Write a brief statement of cause of action, including all U.S. statutes involved)

## NATURE OF SUIT
(Check the one most appropriate box only)

454 To recover money or property

455 To revoke an order of confirmation of a Chapter 11 or Chapter 13 Plan

456 To obtain a declaratory judgment relating to any of the foregoing causes of action

435 To determine validity, priority, or extent of a lien or other interest in property

426 To determine the dischargeability of a debt 11 U.S.C. § 523

459 To determine a claim or cause of action removed to a bankruptcy court

458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property

434 To obtain an injunction or other equitable relief

498 Other (specify)

424 To object or to revoke a discharge 11 U.S.C. § 727

457 To subordinate any allowed claim or interest except where such subordination is provided in a Plan

| ORIGIN OF PROCEEDING<br>(Check one box only) | 1  Original Proceeding | 2  Removed Proceeding | 4  Reinstated or Reopened | 5  Transferred from Another Bankruptcy Court | CHECK IF THIS IS A CLASS ACTION  UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND<br>$ | OTHER RELIEF SOUGHT | JURY DEMAND |
|---|---|---|---|

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NUMBER |
|---|---|

| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NUMBER |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

| FILING FEE<br>(Check one box only) | FEE ATTACHED | FEE NOT REQUIRED | FEE IS DEFERRED |
|---|---|---|---|

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/S/ |
|---|---|---|

B-104
(Rev. 8/99)

## ADVERSARY PROCEEDING COVER SHEET (Reverse Side)

This cover sheet must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney) and submitted to the Clerk of the Court upon the filing of a complaint initiating an adversary proceeding.

The cover sheet and the information contained on it *do not* replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  This form is required for the use of the Clerk of the Court to initiate the docket sheet and to prepare necessary indices and statistical records.  A separate cover sheet must be submitted to the Clerk of the Court for each complaint filed.  The form is largely self-explanatory.

**Parties.**  The names of the parties to the adversary proceeding *exactly* as they appear on the complaint.  Give the names and addresses of the attorneys if known.  Following the heading "Party," check the appropriate box indicating whether the United States is a party named in the complaint.

**Cause of Action.**  Give a brief description of the cause of action including all federal statutes involved.  For example, "Complaint seeking damages for failure to disclose information, Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq.," or "Complaint by trustee to avoid a transfer of property by the debtor, 11 U.S.C. § 544."

**Nature of Suit.**  Place an "X" in the appropriate box.  Only one box should be checked.  If the cause fits more than one category of suit, select the most definitive.

**Origin of Proceedings.**  Check the appropriate box to indicate the origin of the case:

      1.   Original Proceeding.
      2.   Removed from a State or District Court.
      4.   Reinstated or Reopened.
      5.   Transferred from Another Bankruptcy Court.

**Demand.**  On the next line, state the dollar amount demanded in the complaint in thousands of dollars.  For $1,000, enter "1," for $10,000, enter "10," for $100,000, enter "100," if $1,000,000, enter "1000."  If $10,000,000 or more, enter "9999."  If the amount is less than $1,000, enter "0001."  If no monetary demand is made, enter "XXXX."  If the plaintiff is seeking non-monetary relief, state the relief sought, such as injunction or foreclosure of a mortgage.

**Bankruptcy Case In Which This Adversary Proceeding Arises.**  Enter the name of the debtor and the docket number of the bankruptcy case from which the proceeding now being filed arose.  Beneath, enter the district and divisional office where the case was filed and the name of the presiding judge.

**Related Adversary Proceedings.**  State the names of the parties and six-digit adversary proceeding number from any adversary proceeding concerning the same two parties or the same property currently pending in any bankruptcy court.  On the next line, enter the district where the related case is pending and the name of the presiding judge.

**Filing Fee.**  Check one box.  The fee must be paid upon filing unless the plaintiff meets one of the following exceptions.  The fee is not required if the plaintiff is the United States government or the debtor.  If the plaintiff is the trustee or a debtor in possession and there are no liquid funds in the estate, the filing fee may be deferred until there are funds in the estate.  (In the event no funds are ever recovered for the estate, there will be no fee.)  There is no fee for adding a party after the adversary proceeding has been commenced.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the right of the last line of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is *pro se*, that is, not represented by an attorney, the plaintiff must sign.

The name of the signatory must be printed in the box to the left of the signature.  The date of the signing must be indicated in the box on the far left of the last line.