Scott R. Kamrath (Bar No. 191965)
Scott M. Richter (Bar No. 156748)
**LAW OFFICES OF SCOTT R. KAMRATH**
22817 VENTURA BOULEVARD, SUITE 321
WOODLAND HILLS, CALIFORNIA 91364-1202
TELEPHONE (818) 932-9740
FACSIMILE (818) 932-9746


FILED
JAN 31 2007
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

Attorneys for Plaintiff, BOHANNON DEVELOPMENT CORPORATION

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No. LA 05-15763-ES |
| MICHAEL MAZDAQ MANSOURI, | ) Chapter 7 |
| Debtor. | ) Adv. No. AD 05-01701 |
| | ) PLAINTIFF'S TRIAL BRIEF |
| BOHANNON DEVELOPMENT CORPORATION, | ) |
| Plaintiff, | ) Trial: February 22, 2006 |
| vs. | ) Time: 9:30 a.m. |
| MICHAEL MAZDAQ MANSOURI, | ) Location: 255 East Temple |
| Defendant. | ) Courtroom: 1645 |

## I. STATEMENT OF THE CASE

This action arises from events surrounding the purchase and sale of a 2004 Porsche 911 Turbo, vehicle identification number WP0CB29934S675176 ("Subject Porsche"), on November 18, 2003, and again on May 1, 2004. Plaintiff, BOHANNON DEVELOPMENT CORPORATION ("BOHANNON") paid Two Hundred Thousand Thirty-Four Dollars ($200,034.00) in three (3) separate payments to "By Design" as directed by Defendant, MICHAEL MAZDAQ MANSOURI ("MANSOURI").

MANSOURI never told BOHANNON that he was purchasing the car from anyone other than MANSOURI himself, just that "By Design" was his business' name.  Later it was learned that "By Design Automotive, Inc." was a California corporation which was wholly owned by MANSOURI.

Although all checks were made payable to "By Design" and cashed by MANSOURI, the Standard Dealership Sales Contract, attached hereto for reference as **Exhibit A**, dated November 18, 2003 was written-up by MANSOURI to make the transaction appear to be between BOHANNON and "Sunset European Motorcars".  It was learned later that "Sunset European Motorcars" was a fictitious business name of a California corporation known as Formula One Motorcars, LLC, which was owned by friends/business associates of MANSOURI.  BOHANNON wholly dealt only with, and directly with, MANSOURI in the negotiations to purchase the Subject Porsche and to have MANSOURI complete after-market upgrades to the vehicle, at all times, even prior to November 18, 2003 when the Standard Dealership Sales Contract was drawn up.

Through all of the negotiations and transactions between MANSOURI and BOHANNON, MANSOURI argues he was acting merely as an employee for By Design Automotive, Inc. as well as for Formula One Motorcars, LLC dba Sunset European Motorcars.  However, MANSOURI has offered no evidence by way of employment records, paycheck stubs, W-2 Forms or personal or corporate tax returns that support his claims.  Plaintiff contends that MANSOURI was acting on his own behalf, not just as an employee directed by a corporation.

MANSOURI claims to have only been a "partner" of "By Design" rather than its sole owner.  This assertion and attempt to divert

1  attention and liability to others is not supported by the
2  evidence, and would not matter in any event if "By Design" was
3  actually acting and functioning as a proper, formal corporation so
4  as to shield *any* of its owners from personal liability.  However,
5  the evidence confirms that from the incorporation date of By
6  Design Automotive, Inc. on October 14, 1999 up until the sale of
7  the corporation on March 11, 2005 to Rahim Multani, MANSOURI was
8  the sole shareholder of the only 50 shares of common stock that
9  were ever issued.  MANSOURI sold those 50 shares to Mr. Multani
10 via the transaction on March 11, 2005.  MANSOURI was "the guy"
11 with respect to all business activities at By Design Automotive,
12 Inc., which Plaintiff contends is not entitled to separate legal
13 status such as to shield its owner from liability for corporate
14 debts.  By Design Automotive, Inc. was nothing more than
15 MANSOURI's alter-ego.  MANSOURI has produced no minutes from board
16 of director meetings, no minutes from shareholder meetings, no
17 corporate records other than the Articles of Incorporation, no
18 corporate or personal bank records or payroll records to
19 substantiate his claim that he was merely acting as an employee of
20 By Design Automotive, Inc.  The bank records that he did produce
21 indicate that he was paying SBC via an on-line or Electronic Funds
22 Transfer to an account that was set-up with SBC under "Michael
23 Mansouri dba By Design".  MANSOURI also failed to produce any bank
24 records from Cedars Bank, which is where the checks from BOHANNON
25 were deposited.  The evidence will show that personal and
26 corporate funds were being commingled.  There is no evidence that
27 there were any other employees of By Design Automotive, Inc.
28 during the relevant times herein or that the corporation

**PLAINTIFF'S TRIAL BRIEF**

1  maintained any liability or worker's compensation insurance.
2  BOHANNON argues this company is merely a corporate front for
3  MANSOURI to conduct fraudulent business practices and shield
4  himself from personal liability.  BOHANNON, through the testimony
5  of Thomas Bohannon, Dan Dawes, Derek Wiseman, Vadim Salo, Rahim
6  Multani and Sam Hakim will show MANSOURI has a history and a
7  pattern of conducting fraudulent business practices in this manner
8  for his own personal benefit and gain.
9      After he obtained the Subject Porsche from Vadim Salo in a
10 verbal consignment sales deal, and after he contracted with
11 BOHANNON, MANSOURI performed the requested modifications and then
12 entered the Subject Porsche in a car-show on or about January 9,
13 2004 with BOHANNON's *permission* for advertisement benefits of By
14 Design.  Little did BOHANNON know at the time, but such *permission*
15 was not even necessary, because the Subject Porsche had not been,
16 nor was it ever, titled to BOHANNON.  Tom Bohannon from BOHANNON,
17 based in El Paso, Texas, traveled to California to view the
18 Subject Porsche in the car-show, and test-drove the vehicle for
19 the weekend.  Mr. Bohannon traveled to California in or around
20 February of 2004 to take possession of the Subject Porsche after
21 he believed the up-grades were finally complete.  Again, Mr.
22 Bohannon test-drove the Subject Porsche for the weekend, and
23 discovered the up-grades were not satisfactory nor completed as he
24 contracted for.  BOHANNON agreed to allow MANSOURI to correct the
25 modifications of the Subject Porsche.  After a series of
26 disagreements over the modifications to the Subject Porsche,
27 MANSOURI began ignoring BOHANNON's calls sometime around April of
28 2004.  It was about that time that MANSOURI also entered the

Subject Porsche in a rigorous, after-market tuner competition which was never approved or agreed to by BOHANNON, and which was the subject of a write-up and article in the magazine known as "European Car" for further advertising benefit to MANSOURI.

BOHANNON became concerned and traveled to Los Angeles on September 2, 2004. At that time, neither the Subject Porsche nor MANSOURI were in the showroom of "By Design", which was operating out of an address on Sunset Boulevard in West Hollywood where Formula One Motorcars, LLC dba Sunset European Motorcars also conducted its business. However, upon his return once again to "By Design" on September 7, 2004, both MANSOURI and the Subject Porsche were present in the showroom. MANSOURI reassured BOHANNON he would resolve the problems between BOHANNON and himself regarding the Subject Porsche. Upon his return to Texas, BOHANNON, who had still never received title to the Subject Porsche, was still concerned, and as such ordered and obtained a CARFAX report on the vehicle. The report, along with California Department of Motor Vehicle records, show that the Subject Porsche had been sold/transferred to Anthony Jordan and titled to him in May of 2004. The evidence shows no transfer to or titling of the Subject Porsche to BOHANNON at any time.

BOHANNON is listed in the creditor matrix of MANSOURI's personal and voluntary Chapter 7 bankruptcy petition, and the money paid by BOHANNON is listed in Schedule F of MANSOURI's bankruptcy petition as an unsecured non-priority claim. BOHANNON paid this money to MANSOURI in consideration for a 2004 Porsche 911 vehicle, and never received ownership of subject vehicle nor a return of monies paid. MANSOURI received the benefit of

BOHANNON's monies and never gave due consideration. MANSOURI's conversion, larceny and embezzlement constitute grounds for this debt to be determined a non-dischargeable personal debt of his, not a debt of his company, a California corporation he called "By Design Automotive, Inc." which was nothing more than a sham and a corporate shield.

## II. ADMISSIONS AND STIPULATIONS

The following facts are admitted in the Joint Pretrial Order and require no proof:

    i. On or about November 18, 2003, BOHANNON purchased a 2004 Porsche 911 Turbo, with a Vehicle Identification Number WP0CB29934S675176 ("PORSCHE").

    ii. On or after May 2004, the PORSCHE was sold to a third party.

    iii. MANSOURI admits that BOHANNON paid from $160,000 to $200,000 to purchase the PORSCHE with modifications.

    iv. BOHANNON does not currently have ownership or possession of the PORSCHE.

    v. As of January 30, 2007, BOHANNON is listed in the creditor matrix of MANSOURI's bankruptcy petition, and the money allegedly paid by BOHANNON is listed in Schedule F of MANSOURI's bankruptcy petition as an unsecured nonpriority claim.

/ / /

/ / /

/ / /

The following facts are admitted in [Defendant's] Response to [Plaintiff's] Request for Admissions dated July 3, 2006:

    i. MANSOURI admits that he sold the Subject Porsche to BOHANNON in October of 2003 (response number two (2)).

    ii. MANSOURI admits to receipt in full for the purchase of the Subject Vehicle from two different sources, both BOHANNON and Anthony Jordan (response number six (6)).

### III. SUMMARY OF POINTS OF LAW

BOHANNON claims this debt is nondischargeable because under the Bankruptcy Code 11 U.S.C. Section 523(a)(6), debts arising from a debtor's willful and malicious conduct are nondischargeable, including conversion of property. This Court must determine whether the debtor, MANSOURI committed conversion when he took and intentionally kept BOHANNON's monies submitted as purchase price and the sold the Subject Porsche to a third-party without returning BOHANNON's monies, totaling $200,034.00.

Secondly, under the Bankruptcy Code 11 U.S.C. Section 523(a)(4), debts arising from a debtor's act of larceny or embezzlement are nondischargeable. This Court must determine whether MANSOURI's failure to return BOHANNON's monies submitted as purchase price and subsequent sale of the Subject Porsche to a third-party without returning BOHANNON's monies constitutes embezzlement or larceny.

Bankruptcy Code 11 U.S.C. Section 523 (a)(2)(A) states that all debts incurred as a result of fraud are nondischargeable. MANSOURI's agreement to sell the Subject Porsche to BOHANNON

constituted a representation that the $200,034.00 paid by BOHANNON would be used for the purchase of the Subject Porsche with after-market up-grades for the exclusive benefit of BOHANNON as owner. This Court must determine whether MANSOURI's acceptance of BOHANNON's monies for the purchase of the Subject Porsche, and subsequent sale to someone other than BOHANNON without returning BOHANNON's monies totaling $200,034.00 constitutes fraud.

### IV. ANTICIPATED EVIDENTIARY PROBLEMS

Authentication of and foundation for documents and evidence proposed by the parties; entry of documents into evidence from a collateral source, BOHANNON's insurer; exclusion of Defendant's proposed exhibits #41 through #43, which were not disclosed as required by FRBP and LRB 7027, as Defendant produced these documents for the first time on January 29, 2007.

DATED: January 31, 2007        **LAW OFFICES OF SCOTT R. KAMRATH**

_____
Scott R. Kamrath, Esq.
Scott M. Richter, Esq.
Attorneys for Plaintiff,
BOHANNON DEVELOPMENT CORPORATION

**PLAINTIFF'S TRIAL BRIEF**

Dealer Number _____56918_____ Contract Number _____ L.O.S. _____ Stock Number _____

Buyer (and Co-Buyer) Name and Address (Including County and Zip Code):
THOMAS BOHANNON    BOHANNON DEVELOPMENT, CORP
414 WEST HARRIMAN ST, BEND, OR 97701

Creditor - Seller (Name and Address):
Sunset European Motorcars
8929 Sunset Blvd West Hollywood, CA 90069

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2004 | PORSCHE 911 TURBO | 110 | WP0TB29943S675176 | ☐ personal, family or household<br>☒ business<br>☐ agricultural |

SOLD AS EQUIPPED / SUBJECT TO LENDER'S CREDIT APPROVAL

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ .00 is |
|---|---|---|---|---|
| 5__ % | $ .00(e) | $ 141240.00(e) | $ 141240.00(e) | $ 141240.00(e) |

(e) means an estimate

YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | .00 | |
| One Payment of | .00 | |
| 0 Payments | 141240.00 | Monthly, Beginning 12/19/03 |
| One Final Payment | 141240.00 | 12/19/03 |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED

1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories ............ $ 141000.00 (A)
      1. Cash Price Vehicle ............ $ 141000.00
      2. Cash Price Accessories ......... $ .00
   B. Document Preparation Fee (not a governmental fee) ...... $ 150.00 (B)
   C. Smog Fee Paid to Seller .............................. $ 45.00 (C)
   D. Sales Tax (on A + B + C) ............................ $ .00 (D)
   E. (Optional) BPA New Vehicle Report of Sale or Renewal Transaction Fee* $ .00 (E)
   F. (Optional) Service Contract* /MAINTENANCE ........... $ .00 (F)
   G. Prior Credit or Lease Balance paid by Seller to
      N/A ............................................... $ .00 (G)
      (see downpayment and trade-in calculation)
   H. (Optional) Gap Contract (to whom paid)* ............... $ .00 (H)
   I. Other (to whom paid)* .............................. $ .00 (I)
      For _____
   Total Cash Price (A through I) .......................... $ 141195.00 (1)

2. Amounts Paid to Public Officials
   A. License Fees        ESTIMATE ....................... $ .00 (A)
   B. Registration/Transfer/Titling Fees ................... $ .00 (B)
   C. California Tire Fees* .............................. $ .00 (C)
   D. Other _____ ................................. $ .00 (D)
   E. Other _____ ................................. $ .00 (E)
   Total Official Fees (A through E) ....................... $ .00 (2)

3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column a - b)* ... $ .00 (3)

4. Smog Certification Fee Paid to State ................... $ 45.00 (4)

Exhibit A

## STATEMENT OF INSURANCE

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker.

### Vehicle Insurance

| | Term | Premium |
|---|---|---|
| $ NONE Ded. Comp, Fire & Theft | N/A Mos. | $ NONE |
| $ NONE Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury $ NONE Limits | N/A Mos. | $ N/A |
| Property Damage $ NONE Limits | N/A Mos. | $ N/A |
| Medical $ 0 | N/A Mos. | $ N/A |
| $ N/A | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | $ .00(a) |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X _[signature]_
Co-Buyer X _____
Seller X _____

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Application for Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)

| | Term | Exp. | Premium |
|---|---|---|---|
| Credit Life | __ Mos. | | $ NONE |
| Credit Disability | __ Mos. | | $ NONE |
| Total Credit Insurance Premiums | | | $ NONE (b) |

Insurance Company Name _____

Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY

| SELLER ASSISTED LOAN | | OPTIONAL SERVICE CONTRACT |
|---|---|---|
| BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN. | If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:<br>☐ Name of autobroker receiving fee, if applicable: | You want to purchase a service contract written with the following company, for the term shown below for the price shown in item 5F.<br>Company _____<br>Term _____ Mos.or _____ Miles<br>Buyer X _____ |
| Proceeds of Loan From: _____<br>Amount $ N/A    Finance Charge $ /A<br>Total $ N/A    Payable in N/A<br>Installments of $ N/A    $ N/A<br>from this Loan is shown in Item 6D. | | HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding. |

**NOTICE OF RESCISSION RIGHTS**
If Buyer and Co-Buyer sign here, the provisions of the Rescission Rights section on the back giving the Seller the right to rescind if Seller is unable to assign this contract to a financial institution will apply.

Buyer X _____ Co-Buyer X _____

X _____ Buyer Initials     X _____ Co-Buyer Initials

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ Year _____ SELLER'S INITIALS _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.

WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X _____    X _____

Representations of Buyer: Seller has relied on the truth and accuracy of the information provided by you in connection with the Trade-In Vehicle. You represent that you have given a true payoff amount on the vehicle traded in. If the payoff amount is more than the amount shown above in item 6.B as "Prior Credit or Lease Balance," you must pay Seller the excess on demand. If the payoff amount is less than the amount shown above in item 6.B as "Prior Credit or Lease Balance," Seller will refund the difference to you.

Buyer X _____    Co-Buyer X _____

Notice to buyer:
(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _____    Co-Buyer Signature X _____

| THERE IS NO COOLING OFF PERIOD | YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT BEFORE SIGNING BELOW. |
|---|---|
| California law does not provide for a "cooling off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. | YOU ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF THIS CONTRACT AND EVERY OTHER DOCUMENT THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS. |

Buyer Signature X _____ Date 11/15/05 Co-Buyer Signature X _____ Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other Owner Signature X _____    Address _____    Title _____

Seller Signature X _____    Date 11/15/05    By _____

LAW FORM NO. 553-CA

CUSTOMER TRUTH-IN-LENDING COPY

A. Agreed Trade-In Value    Yr ___ Make ___
   Model _____ Odom _____
   VIN _____
B. Less Prior Credit or Lease Balance    $ _____ (B)
C. Net Trade-In (A less B) (indicate if a negative number)    $ _____ (C)
D. Deferred Downpayment    $ _____ (D)
E. Manufacturer's Rebate    $ _____ (E)
F. Other _____    $ _____ (F)
G. Cash    $ _____ (G)
Total Downpayment (C through G)    $ _____ (6)
(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1G above)
7. Amount Financed (5 less 6)    $ 141240.00 (7)
*Seller may keep part of these amounts.

OUT OF CIRCULATION FOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).

_____ X _____ ____
Date    Buyer Signature    Age

_____ X _____ ____
Date    Co-Buyer Signature    Age

**OPTIONAL GAP CONTRACT** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra cost. If you choose to buy a gap contract, the cost is shown in item 1H. See your gap contract for details on the protection it provides.
Term _____ NONE Mos    NONE
                        Name of Gap Contract
Buyer X _____

**OPTIONAL SERVICE CONTRACT** You want to purchase a service contract written with the following company for the term shown below for the price shown in item 1F.
Company _____
Term _____ Mos _or_ _____ Miles
Buyer X _____

**SELLER ASSISTED LOAN**
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.

Proceeds of Loan From: _____ N/A
Amount $ N/A    Finance Charge $ N/A
Total $ N/A    Payable in N/A
installments of $ N/A    $ N/A
from this Loan is shown in item 6D.

**AUTO BROKER FEE DISCLOSURE**
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable: _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

X _____    X _____
Buyer Initials    Co-Buyer Initials

**NOTICE OF RESCISSION RIGHTS**
If Buyer and Co-Buyer sign here, the provisions of the Rescission Rights section on the back giving the Seller the right to rescind if Seller is unable to assign this contract to a financial institution will apply.
Buyer X _____    Co-Buyer X _____

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ Year _____ SELLER'S INITIALS _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
S/S X _____    X _____

Representations of Buyer: Seller has relied on the truth and accuracy of the information provided by you in connection with the Trade-In Vehicle. You represent that you have given a true payoff amount on the vehicle traded in. If the payoff amount is more than the amount shown above in item 6.B as "Prior Credit or Lease Balance," you must pay Seller the excess on demand. If the payoff amount is less than the amount shown above in item 6.B as "Prior Credit or Lease Balance," Seller will refund the difference to you.
Buyer X _____    Co-Buyer X _____

Notice to buyer:
(1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.
Buyer Signature X _____    Co-Buyer Signature X _____

**THERE IS NO COOLING OFF PERIOD**
California law does not provide for a "cooling off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT BEFORE SIGNING BELOW.
YOU ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF THIS CONTRACT AND EVERY OTHER DOCUMENT THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS.

Buyer Signature X _____ Date _____    Co-Buyer Signature X _____ Date _____
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other Owner Signature X _____    Address _____
Seller Signature X _____ Date _____ By _____    Title _____

LAW FORM NO. 553-CA    CUSTOMER TRUTH-IN-LENDING COPY

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods installed on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance or service or gap contracts we finance for you; and
      • All proceeds from insurance or service or gap contracts or other incidental contracts we finance for you. This includes any refunds of premiums.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type

   3. [illegible] will sell the vehicle. We will send you a written notice [of s]ale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on the face of this contract, not to exceed the highest rate permitted by law, until you pay.
   g. **What we may do about optional insurance or service or gap contracts.** This contract may contain charges for optional insurance or service or gap contracts or other incidental optional products or services charges. If we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle.

4. **WARRANTIES SELLER DISCLAIMS**
   **If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **Applicable Law**
   Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

7. **Warranties of Buyer.** You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

---

**CREDIT DISABILITY INSURANCE NOTICE
CLAIM PROCEDURE**

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the

charge you must pay. The charge the premium for the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance or service or gap contract charges.** If we obtain a refund on insurance or service or gap contracts or other incidental contracts, we will subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means:
      - You do not pay any payment on time;
      - You start a proceeding in bankruptcy or one is started against you or your property; or
      - The vehicle is lost, damaged or destroyed.
      - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

---

**Rescission Rights**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may rescind (cancel) the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to rescind. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

| Seller assigns its interest in this contract to | Assignee at address under the terms of Seller's agreement with Assignee. |
|---|---|
| ☐ Assigned with recourse | ☐ Assigned without recourse | ☐ Assigned with limited recourse |

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action, and my business address is: 22817 Ventura Boulevard, Suite 321, Woodland Hills, California 91364-1202.

On January 31, 2007, I served the following document(s): **PLAINTIFF'S TRIAL BRIEF**; on the interested parties in this action by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Paul S. Strauss, Esq.<br>**THE STAUSS LAW GROUP**<br>Post Office Box 5393<br>Beverly Hills, California 90209<br>Tel: (310) 651-8174<br>Fax: (310) 601-1867 | Attorneys for Debtor/Defendant, MICHAEL MAZDAQ MANSOURI |
| Paul S. Strauss, Esq.<br>**THE STAUSS LAW GROUP**<br>1925 Century Park East<br>Suite 500<br>Los Angeles, California 90067 | Attorneys for Debtor/Defendant, MICHAEL MAZDAQ MANSOURI |

__xx__ By U.S. Mail; I am readily familiar with the business' practice for collection and processing of correspondence and mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit with postage thereon fully prepaid at Woodland Hills, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____ By Personal Service; I delivered such envelope(s) by hand to the office(s) of the addressee(s).

____ By Federal Express/U.P.S. Next Day Delivery; I am readily familiar with the business' practice of collection and processing correspondence for delivery by Federal Express/U.P.S. Next Day Delivery.

____ By Facsimile; on _____, at approximately _____, I faxed such document from our facsimile telephone number (818) 932-9746 to the office(s) of the parties as stated on the service list. The document was transmitted by facsimile transmission and the transmission was reported as complete and without error.

____ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

__xx__ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 31, 2007, at Woodland Hills, California.

_____
ANGELINA M. ROTHWELL